W. M. YARBOROUGH *et al.*, plaintiffs in error, *vs.* JOHN H. LUMPKIN, sheriff, *et al.*, defendants in error.

1. On a rule to distribute money between contesting laborers' and mechanics' liens, it appeared that the affidavit for the enforcement of the oldest lien was not attached to the execution. It was proven that the affidavit was so attached when the papers were delivered to the sheriff, and had been "lost off or worn off" whilst in his hands:

*Held*, that it was not error to order the execution to be paid.

2. One execution was against Steedon Bray, the contesting ones against Stogner Bray, and it was claimed that the property sold belonged to Stogner Bray. Counsel stated in their place to the court that both names referred to the same person, which was not objected to as evidence, nor was the fact denied:

*Held*, that the identity of the defendant in the several executions was sufficiently proven.

3. When the property from which money was raised by levy and sale had been claimed and the claim withdrawn, and the sheriff testified that the chief creditor, who he understood represented all the creditors, stated to him that the fee of the claimant's attorneys was to be paid out of the proceeds on the condition of their consent to the sale, and that the property belonged to the claimant, it was not error in the court to order that a proper sum be held subject to a trial by jury as to the claim of the attorneys for their fee.

4. It is too late for a contesting creditor in such a case, after the decision of the court has been pronounced, to make the issue that the creditor holding the oldest lien did not in fact do the work for which the lien was claimed, unless for special cause shown.

Money rule. Laborers' and mechanics' liens. Executions. Attorneys. Fees. Before Judge HARVEY. Floyd Superior Court. May Term, 1873.

W. M. Yarborough and W. M. Bray procured a rule against John H. Lumpkin, sheriff, requiring him to show cause why he should not pay over to them the amount due on their executions against Stogner Bray, based on judgments obtained November 21st, 1872, out of funds in his hands realized from the sale of the property of the defendant. The answer of the sheriff set up, as reasons why he had not satisfied said executions, the following facts:

1st. There is an older execution in his hands, amounting to over $50 00 and costs, in favor of P. R. Williams, claiming to be paid out of said fund.

2d. The money in his hands was realized from the sale of the property of the defendant under a distress warrant in favor of N. B. Ford, and Forsyth & Reese, attorneys at law, had notified him to hold up that part of the fund realized from the sale of certain wheat and potatoes which had been claimed by Andrew J. Bray, and the claim dismissed under

an agreement that the proceeds should be subject to the fees of said attorneys who represented the claimant.

3d. He had realized from the sale of said property $649 95, and had paid out, in the satisfaction of claims, costs and expenses, all of said sum but $187 29.

4th. He had offered to pay to movants the balance in his hands over and above the sums he had notice to hold up.

A traverse was filed to the last ground of said answer.

Movants objected to the execution in favor of P. R. Williams being paid, for two reasons:

1st. Because it was based upon the foreclosure of a laborer's and mechanic's lien, and no affidavit appeared, the only record being the judgment and *fi. fa.*

2d. Because said execution was against Steedon Bray, and not Stogner Bray, the defendant in execution, the proceeds of whose property was then in the sheriff's hands.

In response to these objections, counsel representing said execution, stated in his place that the missing affidavit was on the other half of the sheet of paper which contained the judgment, and had been worn off or lost, and he did not then know where it was; that Steedon Bray and Stogner Bray were the same man; that all the executions were in fact against the same person. The sheriff also testified that the affidavit above referred to was lost off, or mislaid, after said *fi. fa.* was placed in his hands to hold up the money.

The statement as to the identity of Steedon and Stogner Bray not being disputed, the court ordered the Williams execution, it being the oldest, to be paid, and movants excepted.

Before the order was formally passed, but after the decision was announced, counsel for movants tendered an issue denying that Williams had done the work claimed for Stogner Bray. This the court refused to allow, and movants excepted.

In reference to the money claimed by Forsyth & Reese, as attorneys' fees, it appeared from the evidence of the sheriff that N. B. Ford, the principal creditor of the defendant in execution, and whom he understood represented movants, agreed that if said attorneys would consent for certain wheat

Yarborough *et al. vs.* Lumpkin *et al.*

and potatoes, which were claimed by their client, Andrew J. Bray, to go to sale, they should be paid out of their proceeds; that Ford admitted that said property belonged to the claimant.

The court directed that $25 00 be held up subject to a trial by jury as to the said claim for attorneys' fees, and that the balance be paid to movants; whereupon movants excepted.

Error is assigned upon each of the aforesaid grounds of exception.

WRIGHT & FEATHERSTON, for plaintiffs in error.

No appearance for defendants.

TRIPPE, Judge.

1. Without intending to hold that a plaintiff in an execution, sued out on the summary foreclosure of a laborer's or mechanic's lien, is obliged, in order to give legal force or efficacy to his *fi. fa.* in a contest over a fund in court, to attach the affidavit made by him in order to get the execution, we think the proof, in any view we take of this case, that such affidavit was to the *fi. fa.* when it was handed to the sheriff, and had been "lost off or worn off" whilst in his hands, was sufficient to let in the execution. If it appeared to be entitled to the fund—was older than the contesting liens—the loss of the affidavit should not cause the creditor to lose all his rights. I am pretty strongly inclined to think that it is not a legal necessity to attach the affidavit to the *fi. fa.* But if it were, it appeared that it had been so attached, and had become detached whilst the officer had it.

2. As to the difference in the christian name of the defendant in the *fi. fas.*—in one it being *Steedon* Bray, and in the other *Stogner* Bray—it was shown to the satisfaction of the court that they were the *names* of the same man, or in other words, that the identity of the defendant in the executions was proved. It is true, this proof was the statement of counsel to the court, but it was not objected to as not being proper

evidence, and as the court certifies, the fact thus stated was not denied. It was a question for the court to determine under the testimony.

3. It was in evidence that the property levied on had been claimed by A. J. Bray; that the chief creditor, Ford, who represented plaintiffs in error, had agreed with the claimant's counsel that if the claim was withdrawn, and the property allowed to go to sale, their fee should be paid out of the proceeds of a certain part of it, *which was admitted*, when the agreement was made, *to belong to the claimant*. It did not appear what that property, so admitted to belong to the claimant, was worth, nor what the fee of counsel was. On this state of facts, the court directed $25 00 to be retained in the sheriff's hands, subject to a trial by a jury, as to the claim of the attorneys for their fee. All this could be settled satisfactorily by a jury. The attorneys, by special agreement, were to have their claim paid out of the fund. That fund was in court, and all parties before it who had an interest in the money. Nobody could be hurt by the direction the court gave to this branch of the case, and a jury could adjust the very question the parties had agreed to. Of course, the fact as to such an agreement having been made, the amount of the fee, and any other matter legally affecting the question to be determined, were proper for consideration by the jury.

4. After the court had heard all these questions, pronounced upon them, and announced its judgment for the appropriation of the fund, it was proposed to tender an issue denying the lien of the oldest *fi. fa.*, and to set up that the plaintiff therein had not, in fact, done the work on which his claim was founded. The court refused to allow this, on the ground that the case had been heard and was disposed of. We do not know that the record shows exactly how the case proceeded whilst being heard by the court. The judge certainly understood that the whole matter was before him for adjudication; that all the rights of the parties, as they might stand upon a full hearing, were then to be passed upon. After he had given this hearing to the parties, and decided every question,

even to the disposition of the fund, the further right was asked to be let in to deny the validity of the claim of one of the contesting creditors. No reason was stated why this was not done before the judgment of the court was pronounced, and no information given that if the parties lost on the grounds they had taken, they had another. Had they done ·this, doubtless the court would have heard all the questions at once. It was a matter with the court whether it would allow the case to be opened at that stage, and we cannot say there was an abuse of discretion. Had the proposition to contest further the claim which had been allowed been supported by affidavit, it would have presented a strong case to the court, especially if coupled with good reasons for not sooner presenting that ground. But the court had all before it—could see and understand the reasons upon which it acted as to that question better than we possibly can.

Judgment affirmed.